[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13532
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01645-MHC

FEDERAL TRADE COMMISSION,

Plaintiff-Counter Defendant-
Appellee,

versus

THE PRIMARY GROUP, INC., etc., et al.,

Defendants,

GAIL DANIELS,
individually and as an officer of
The Primary Group Inc.,

Defendant-Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 29, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

The Federal Trade Commission sued Gail Daniels and her company, The Primary Group, for violating the Federal Trade Commission Act and the Fair Debt Collections Practices Act (FDCPA).  The district court ultimately granted the FTC's motion for summary judgment and entered a judgment against Daniels and Primary Group in the amount of $980,000.  Daniels, proceeding pro se here, as she did in the district court, raises a number of challenges to that judgment and several orders the district court entered over the course of the litigation.

Daniels contends that the district court erred by:  (1) granting summary judgment when there was a genuine dispute of material fact as to her knowledge of Primary Group's illegal debt collection practices, (2) refusing to stay the proceedings in light of her medical condition, and (3) incorrectly calculating the amount of equitable relief due the FTC.[1]

I.

We begin with Daniels' contention that the district court erred in granting

---

[1] Daniels also contends that the district court erred in issuing a Temporary Restraining Order (TRO) freezing her assets, that the district court judge assigned to her case should have recused himself, and that the FTC engaged in misconduct while pursuing its case against her.  As to the TRO, a district court's decision to grant one is generally not appealable and none of the exceptions to that rule applies in this case.  AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1314 (11th Cir. 2014).  Her contentions that the district court judge abused his discretion by failing to recuse himself or that the FTC engaged in improper behavior are plainly without merit and do not require further discussion.

2

summary judgment against her on the FTC Act and FDCPA claims.  We review <u>de novo</u> a district court's decision to grant summary judgment.  <u>Dolphin LLC v. WCI Cmtys., Inc.</u>, 715 F.3d 1243, 1247 (11th Cir. 2013).  A party is entitled to summary judgment only if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In order to hold a corporate owner personally liable for her company's violations of the FTC Act or FDCPA, the FTC must first show that the corporation committed violations of those acts for which it is liable.  <u>See</u> <u>FTC v. Gem Merch. Corp.</u>, 87 F.3d 466, 470 (11th Cir. 1996).[2]  In this case, there is no genuine dispute of material fact as to whether the FTC has satisfied that element.  Daniels does claim that one or more of the most egregious scripts for telephone conversations with debtors the FTC found at Primary Group's offices was not created or used by her company.  And she testified at the preliminary injunction hearing, and in later filings, that she can prove that the FTC's investigator and a number of the declarants who submitted complaints to the FTC are lying.

Even assuming both of those things are true, Daniels has not submitted any

---

[2] Although <u>Gem Merchandising</u> and other decisions cited in this opinion concern what the FTC must show to establish individual liability under the FTC Act, the same standard applies in FDCPA cases brought by the FTC.  It does because, in most cases, "violations of the FDCPA are deemed to be unfair or deceptive acts or practices under the" FTC Act, which is why the FTC has the authority to prosecute FDCPA cases.  <u>See</u> <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Urlich LPA</u>, 559 U.S. 573, 577, 130 S. Ct. 1605, 1608 (2010).  That is why we have relied on caselaw and administrative adjudications concerning the FTC Act when interpreting the FDCPA. <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1172 (11th Cir. 1985).

evidence that creates a genuine dispute of material fact as to whether Primary Group's debt collectors sent text messages to debtors claiming to be process servers, in violation of 15 U.S.C. §§ 1692e(3), (5), (13) and § 1692j(a), and failed to identify themselves as debt collectors, in violation of 15 U.S.C. § 1692e(11). Plus, several of the scripts that everyone seems to agree were used by her company at least imply that the debtor being contacted is facing criminal charges. See id. § 1692e(4),(5).

That being said, a corporation's FDCPA violations alone are not enough for the owner of that corporation to be held personally liable. The FTC must show that the individual knew of the deceptive practices and either participated directly in those practices or had the authority to control them. FTC v. IAM Mktg. Assocs., 746 F.3d 1228, 1233 (11th Cir. 2014). Daniels does not deny that, as the owner of Primary Group, she had the authority to control its practices. But she vigorously denies having any knowledge of its illegal activities.

We have not yet decided what suffices to show that a corporation's owners, officers, or employees had knowledge of its violations of the FTC Act or FDCPA. But the Fourth and Seventh Circuits have. They have concluded that knowledge "may be established by showing that the individual had actual knowledge of the deceptive conduct, was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning

4

of the truth." FTC v. Ross, 743 F.3d 886, 892 (4th Cir. 2014); accord FTC v. World Media Brokers, 415 F.3d 758, 764 (7th Cir. 2005). We believe this standard correctly describes the breadth of individual liability under the FTC Act and the FDCPA.

The evidence the FTC pointed to in its motion for summary judgment was sufficient, in the absence of any response from Daniels, to show that it was entitled to judgment as a matter of law. Daniels admitted that she kept herself informed of the day to day operations of Primary Group, that she had the ability to listen to recordings of phone calls made by Primary Group employees, and that she had cameras set up to monitor every work station at the corporation's facilities. She also acknowledged receiving several Better Business Bureau complaints, which she did not investigate even though she had been forced to fire significant portions of her staff in the past due to their unethical behavior. Even in light of Daniels' protestations that she was not aware of the content of the scripts, the texting, or any other illegal behavior, the evidence in the record is enough to support a grant of summary judgment. If Daniels did not know of Primary Group's deceptive conduct, it is only because she intentionally avoided discovering it despite knowing that there was "a high probability" that her corporation was engaging in unlawful debt collection practices. See Ross, 743 F.3d at 892; World Media Brokers, 415 F.3d at 764.

## II.

Daniels next contends that the district court should have stayed the proceedings in this case as a result of her poor health. We review only for an abuse of discretion the district court's refusal to stay summary judgment proceedings in light of Daniels' medical difficulties. Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir. 1989). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co., 828 F.3d 1331, 1333 (11th Cir. 2016) (quotation marks omitted).

The district court did none of those things in this case. It gave Daniels numerous opportunities to present documentation showing that she was physically unable to participate in the litigation and specifying when she would be able to participate again. She never did that. Daniels did eventually submit evidence to the court showing that, among other things, she suffers from Parkinson's disease (or something similar to it), has vision problems, and suffers from short-term memory loss. But none of the materials she submitted described her conditions in detail or explained when she would again be able to participate in the litigation. The district court could not, in fairness to the FTC, stay proceedings indefinitely. Given Daniels' history of failing to timely comply with the court's orders, the

6

court was not required to stay proceedings and have Daniels certify periodically that her disabilities continued.[3] Daniels' numerous filings in this case (including many that are of substantial length) belie her assertion that she could not, either on her own or with assistance, be expected to respond to the FTC's motion for summary judgment or otherwise participate in the litigation.

### III.

Finally, we address Daniels' contention that the district court improperly ordered disgorgement in the amount of $980,000. She argues that this was error because that was the amount of Primary Group's gross earnings, not the amount it profited or was unjustly enriched by its FTC Act or FDCPA violations. She also protests that the FTC did not present evidence showing that any consumers actually paid Primary Group, despite the fact that the district court requested that information.

We review only for an abuse of discretion a district court's grant of equitable relief, like disgorgement. FTC v. Wash. Data Res., Inc., 740 F.3d 1323, 1325 (11th Cir. 2013). We review only for clear error any factual findings made to support the grant of equitable relief. Id. at 1326.

Disgorgement is concerned with unjust gain to wrongdoers, and we have

---

[3] Daniels also argues that proceedings should have been stayed while she sought a writ of mandamus from this Court, but mandamus proceedings do not entitle the party seeking mandamus to a stay of the district court proceedings. See Fed. R. App. P. 21.

explained that it is based on net revenue, which is calculated by subtracting any refunds from a company's gross receipts. Id. at 1326 –27. The evidence showed that Primary Group's gross receipts totaled $980,000. The only evidence in the record suggesting that Primary Group made any refunds is Daniels' naked assertion in her deposition that refunds were made "all the time." Because Daniels failed to provide any evidence establishing the amount of the refunds she alleges were made, the district court did not clearly err in calculating Primary Group's unjust gains. It follows that the court did not abuse its discretion by ordering disgorgement in the amount of $980,000.

IV.

The district court did not err by granting summary judgment to the FTC. And neither its refusal to stay the proceedings nor its calculation of equitable relief was an abuse of discretion.

**AFFIRMED.**