**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-14195

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ELLIOT TOMETRIUS WALKER,
a.k.a. Georgia Boy,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:17-cr-00029-MW-MAF-1

_____

Before LUCK, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Elliot Walker appeals the revocation of his supervised release and his resulting sentence of 36 months' imprisonment.

Walker brings three issues on appeal, which we address in turn. After review, we affirm.

## I. VIOLATION OF SUPERVISED RELEASE

Walker first contends the district court clearly erred in finding, by a preponderance of the evidence, that he possessed a substance containing fentanyl with intent to distribute in violation of a mandatory condition of his supervised release. Walker contends the Government did not provide direct evidence linking him to the alleged sale of fentanyl, as there was only direct evidence pointing to "Rome's brother." Walker asserts the Government's circumstantial proof of identity was insufficient to meet its burden.

A district court may revoke a term of supervised release "upon a finding by a preponderance of the evidence that the defendant violated a condition of his supervised release." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (quotation marks omitted). Possession with intent to distribute can be proven by direct or circumstantial evidence. *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989). Even if a defendant's hypothesis is "supported by some modicum of evidence," the factfinder is "free to choose between or among the reasonable conclusions to be drawn from the evidence presented." *United States v. Williams*, 865 F.3d 1328, 1345-46 (11th Cir. 2017) (quotation marks omitted).

The district court's finding that Walker possessed a substance containing fentanyl with the intent to distribute was not clearly erroneous. The undisputed evidence showed the

cooperating subject (CS) called a narcotics source using a phone number matching the phone number Walker provided to his probation officer.  Similarly, the controlled purchase between the CS and his source occurred at an address matching the address Walker provided to his probation officer.  Leading up to the controlled purchase, Tallahassee Police Department Investigator Andrew Mixon observed a white Honda entering the neighborhood with a Georgia license plate that he knew Walker operated from previous investigations, which also matched the vehicle Walker listed in his monthly probation report and Georgia registered vehicle records.  The CS also exclaimed, "[t]hat's him," when the white Honda drove past.  The evidence was sufficient for the district court to conclude that Walker drove the Honda.  *See Williams*, 865 F.3d at 1345-46.  It was also reasonable for the district court to choose among the reasonable conclusions that "Rome's brother," who drove a 2004 Honda, had the same phone number, and the same address as the information Walker provided to his probation officer, was indeed referring to Elliot Walker.[1]  *See id.*

Next, ample evidence supports that Walker intended to distribute fentanyl.  As discussed above, the CS contacted a fentanyl

---

[1] Walker contends the Government failed to prove his identity as the drug seller to the CS because "Rome" has six brothers and there was no evidence whether the brothers shared common household resources.  The Government was not required to affirmatively disprove this theory.  *See United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984) ("[E]vidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.").

source to set up a controlled purchase who had the same phone number and address as Walker. Investigator Mixon searched the CS to ensure he had no drugs on him before making the controlled purchase. And upon the CS's return, he was immediately searched, and drug contraband was recovered, which was tested and confirmed to contain fentanyl. Even though law enforcement did not have eyes on the actual transaction, Investigator Mixon testified the CS came back to his car relatively quickly, and Tallahassee Police Department Officer Glenn Farmer testified the CS made "very brief" contact with the source. The district court went through several "what if" scenarios, including losing sight of the CS, the fact the CS had a criminal history and was potentially unreliable, and the potential the CS could have gone to a different house. As the court put it, the different versions of what happened and the details presented all coincided.

Lastly, there is no requirement in a supervised release revocation hearing to prove beyond a reasonable doubt the defendant committed the alleged acts. *See Cunningham*, 607 F.3d at 1266. Despite the Government dropping the charges on the basis it might not meet the beyond a reasonable doubt standard, that is not the standard here. The record shows the court used the proper standard of a preponderance of the evidence in making its findings.

Considering the record, the court reasonably concluded, by a preponderance of the evidence, that Walker possessed a substance containing fentanyl with the intent to distribute. *See Poole*, 878 F.2d at 1391-92. As this finding was not clearly erroneous, the

revocation of his supervised release was not an abuse of discretion. *See United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994) (reviewing a district court's revocation of supervised release for abuse of discretion); *F.T.C. v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013) (explaining it is an abuse of discretion if a court bases its decision on findings of fact that are clearly erroneous).

## II. ADMISSION OF HEARSAY

Second, Walker asserts the district court erred by relying on hearsay testimony to find him guilty of violating his supervised release. He contends the district court failed to conduct a balancing test. He asserts that, through double hearsay, evidence was admitted that the CS told law enforcement, who told Investigator Mixon, that he could purchase fentanyl from Rome's brother. He contends there is no explanation as to why the CS was not produced to testify, and thus, the district court could not conduct the required balancing test.

The Federal Rules of Evidence do not apply in supervised release revocation hearings. *Frazier*, 26 F.3d at 114. However, although the Federal Rules of Evidence do not apply to supervised release revocation hearings, it does not mean the admission of hearsay testimony is "automatic." *Id.* Defendants in revocation hearings are entitled to certain minimal due process requirements, including the right to confront and cross-examine adverse witnesses. *Id.*; *see also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). As such, when determining whether to admit hearsay testimony at supervised release revocation hearings, the district court "must

balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id*.

A district court may admit hearsay evidence when there are "sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001) (quotation marks omitted) (admitting hearsay in a sentencing hearing). To successfully challenge a district court's revocation of a term of supervised release on the basis that it relied on improper hearsay evidence, a defendant must show "(1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (quotation marks omitted). "[T]he defendant bears the burden of showing that the court *explicitly* relied on the information." *Id*. Even if the district court failed to conduct a *Frazier* balancing test and erred in admitting and relying on hearsay evidence, that error can be deemed harmless if the court properly considered evidence that overwhelmingly demonstrated that the defendant breached the terms of his supervised release. *Frazier*, 26 F.3d at 114.

The district court did not expressly conduct a *Frazier* balancing test despite admitting Investigator Mixon's hearsay statements about the CS identifying "Rome's brother" as his source of fentanyl. However, the district court explained there was sufficient indicia of reliability because everything the CS "said came to pass," it

made an explicit credibility finding based on corroborating evidence from the officers' coinciding testimony, and Walker had the opportunity to rebut the evidence. *See Zlatogur*, 271 F.3d at 1031. Specifically, Walker rebutted the evidence by pointing out the CS never said the name "Elliot Walker." Walker also explained the CS did not offer which of Rome's six brothers he was referring to, and emphasized there was no evidence established by the Government differentiating Rome's brother's vehicles, phone numbers, or addresses. It is thus clear that, while the court did not expressly discuss the *Frazier* balancing test on the record, the court understood this statement was hearsay and properly balanced this statement before admitting it. *See Frazier*, 26 F.3d at 114; *Zlatogur*, 271 F.3d at 1031.

Assuming, *arguendo*, the district court erred in admitting the hearsay statement, this error is harmless because Walker has not met his burden of showing the district court "explicitly relied on" the testimony about the CS's statement identifying "Rome's brother" as the source of supply when it found Walker guilty of violating the terms of his supervised release. *See Frazier*, 26 F.3d at 114; *Taylor¸* 931 F.2d at 847. The record, instead, reflects the district court relied on (1) Investigator Mixon's testimony about the operational plan to make the controlled fentanyl purchase, where he identified a white Honda as Walker's vehicle which he knew from previous investigations; (2) Officer Farmer's testimony regarding his observations of two people meeting then separating, which coincided with the description Investigator Mixon provided; (3) the CS returning to Investigator Mixon with a substance that tested

positive for containing fentanyl; and (4) United States Probation Officer Andrew Swope's testimony corroborating the information related to Walker's phone number, address, and vehicle. The court also stated it could not "rely on hearsay alone and [it] ha[d] to look at the hearsay and see if it's corroborated." Based on the coinciding testimony presented at sentencing, the district court found there was sufficient circumstantial evidence to support a finding that Walker breached the terms of his supervised release. Because any potential *Frazier* error was harmless, and because the evidence overwhelmingly demonstrated that Walker did, in fact, breach the terms of his supervised release, the district court did not err when it found Walker guilty of violating his supervised release.

## III.  RELIANCE ON AN IMPERMISSIBLE FACTOR

Third, Walker contends his revocation sentence was procedurally unreasonable because the district court improperly relied on retribution concerns under 18 U.S.C. § 3553(a)(2)(A). Section 3583(e) governs permissive release revocation. 18 U.S.C. § 3583(e). Under the statute, a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering some, but not all, the factors set forth in 18 U.S.C. § 3553(a). *Id.* The § 3553(a) factors require the sentencing court to consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the applicable Guidelines range, and (4) the need to provide the defendant with needed training, medical care, or correctional treatment. *Id.* §§ 3553(a)(1), (2)(D), (4); 3583(e).

Additional factors include pertinent policy statements of the Sentencing Commission, protecting the public from the defendant's future criminal conduct, affording adequate deterrence to criminal conduct, avoiding unwarranted sentencing disparities,  and restitution to the victims.  *Id*. §§ 3553(a)(2)(B), (C), (5)-(7); 3583(e).  Notably, § 3583(e) does not include 18 U.S.C. § 3553(a)(2)(A), which provides that the district court consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id*. § 3553(a)(2)(A).

The Supreme Court recently clarified that a district court may not consider § 3553(a)(2)(A), or "the need to exact retribution for the defendant's underlying crime" when revoking a defendant's term of supervised release.  *Esteras v. United States*, 606 U.S. 185, 194-95 (2025).  It reasoned that, when a defendant violates the conditions of his supervised release,  it makes sense that a court "must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution."  *Id*. at 196.  The Court explained that a sentencing court may consider the needs to deter, incapacitate, and rehabilitate, but it "cannot consider the nature and circumstances of the [underlying] offense as relevant to § 3553(a)(2)(A)'s retributive focus."  *Id*. at 200.  Notably, *Esteras* did not consider whether retribution for the violation of the conditions of supervised release can factor into a revocation decision.  *See id*. at 194 n.5 ("tak[ing] no position" on the Sentencing Commission's view that "the sentence imposed upon revocation is intended to

sanction the violator for failing to abide by the conditions of the court-ordered supervision" (quotation marks and alteration omitted)). The Supreme Court also made a "few observations" regarding appellate review of this issue, noting that if the defendant failed to make a district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal of the issue is governed by plain-error review. *Id.* at 202. Under plain-error review, the district court's revocation order should be affirmed "unless it is clear or obvious that the district court actually relied on § 3553(a)(2)(A)—because it did so expressly or by unmistakable implication." *Id.* at 202-03 (quotation marks omitted).

As Walker did not object on the basis that the district court considered an impermissible § 3553(a) factor, we review for plain error. *See id.* The district court did not plainly err because it is neither clear nor obvious from the record that the district court relied on § 3553(a)(2)(A) when imposing Walker's sentence, as opposed to the "forward-looking ends" of deterrence, incapacitation, and rehabilitation. *See id.* at 196, 202-03. For example, in explaining its sentence at the revocation hearing, the district court considered mitigating circumstances related to Walker's rehabilitation, including the fact he maintained consistent work during his term of supervised release, reported to probation, and did not have repeated violations. The court then emphasized that, after serving a lengthy sentence for selling methamphetamine, he sold fentanyl upon his release, which is deadly. This reflects the court's focus on the need to afford adequate deterrence and the need to protect the public from Walker's further crimes of distributing fentanyl in the

24-14195                    Opinion of the Court                    11

community.  *See* 18 U.S.C. § 3553(a)(2)(B)-(C).  So, even if the district court did consider the need to exact retribution, it could have done so not to punish Walker for his underlying criminal conviction of selling methamphetamine, but to "sanction [him] for failing to abide by the conditions of the court-ordered supervision" (i.e. by failing to refrain from committing another federal, state, or local crime)—an issue on which the Supreme Court took no position.  *See Esteras*, 606 U.S. at 194 n.5.  Walker has failed to show the district court plainly erred under *Esteras*.[2]

    **AFFIRMED.**

---

[2]  Walker has abandoned any other challenge to the reasonableness of his revocation sentence by failing to raise such an argument on appeal.  *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022).  In any event, the district court considered the § 3553(a) factors and imposed a substantively reasonable sentence.  *See United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (stating we examine "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors").